JACOB S. ATWOOD, PLAINTIFF. IN ERROR, V. JOHN PEREGOY ET AL., DEFENDANTS IN ERROR.

Partnership: JUDGMENT: EVIDENCE. Where an action was brought against certain persons as partners for goods alleged to have been sold and delivered to the firm, and a preponderance of the testimony tends to show the existence of such partnership and the liability of the firm for the goods so purchased, a judgment of the district court against said alleged partners for such goods will not be set aside as being against the weight of evidence.

ERROR to the district court for Lancaster county. Tried below before HAYWARD, J.

*J. E. Philpott,* for plaintiff in error.

*Cornish & Tibbetts,* for defendants in error.

MAXWELL, CH. J.

On the 10th day of June, 1885, defendants in error [plaintiffs below] filed their amended petition in the court below, stating that they are and were partners, doing business under the firm name and style of Peregoy & Moore.

That Jacob S. Atwood and Frank E. Sarsbaugh were at all times named in the petition, and including the time of the commencement of this action, partners, doing business in Lincoln by the firm name and style of Atwood & Sarsbaugh.

That plaintiffs, in the regular course of trade, sold and delivered to defendants, at defendants' request, goods and merchandise as follows, to-wit: ·

| | |
|---|---|
| May 29, 1883, cigars .....................................| $29 40 |
| June 27, 1883,    "    ...................... ..............| 35 40 |
| July 14, 1883,    "    ....................................| 59 00 |
| Sept. 14, 1883,    "    ....................................| 47 00 |

That the goods so sold and delivered amounted to $171-.70, and defendants agreed to pay said amount. Said sum is due and payable from defendants to plaintiffs. Said sum has not been paid nor any part thereof. There is due from defendants to plaintiffs on said account $171.70.

The answer of Atwood was a general denial.

On the trial of the cause judgment was rendered in favor of the plaintiffs below and against the defendants in the sum of $194.65.

Plaintiff in error, one of the defendants below, thereupon filed a motion for a new trial, alleging:

1st. The court erred in finding for the plaintiffs.

2d. The court erred in finding that the said Sarsbaugh and said Jacob S. Atwood were partners.

3d. The said findings are contrary to law.

4th. The findings of the court are not sustained by the evidence.

This motion was overruled, to which plaintiff in error excepted.

The only error relied upon in this court is, that the judgment is not sustained by the evidence.

On the trial of the cause Frank E. Sarsbaugh, one of the defendants below, testified: "I am 30 years of age, reside in Hastings, and at present am tending bar. Jacob S. Atwood and myself are the parties defendant to this suit. I was engaged with Mr. Atwood in a billiard hall in the Arlington hotel, at Lincoln, on and after May 1st, 1883, till first of March, 1884, under the name of Atwood & Sarsbaugh. We had a contract in writing; here it is:

"'LINCOLN, NEB., May 1st, 1883.

"'Agreement between F. E. Sarsbaugh and J. S. Atwood, in which Sarsbaugh agrees to take charge of, and manage to the best of his ability, the Arlington Billiard Hall, devoting his time thereto, paying all the expenses incident to running the same, including gas, fuel, license on billiard tables, and such additional help as will be necessary to

properly run the same, and to pay Atwood one hundred and twenty-five dollars per month, and payable monthly as rent for use of rooms, tables, and other fixtures, etc.; to keep the fixtures and tables in good order, so as to return the same in as good condition as received, except the natural wear of use. Atwood to furnish six tables and fixtures now in use, except one pool table, which is ordered from Chicago, and expected next week, and in consideration of such undertaking Atwood agrees that in case the net receipts are not sufficient when equally divided, half and half, alike to Sarsbaugh and Atwood, to make Sarsbaugh $58.33 per month; then Atwood agrees to pay Sarsbaugh the difference so as to make it equal to the rate of $700 per annum for such time as this agreement exists or Sarsbaugh continues to run the same as above.

"'J. S. ATWOOD,

"'F. E. SARSBAUGH.'"

Q. Under what name did you purchase goods and do all business?

A. Under the name of Atwood & Sarsbaugh; I knew of no other except Mr. Atwood who advertised under that name. He advertised in first week in May, 1883, in the Lincoln *State Journal* and the *Evening News*; I think Mr. Atwood put it in, because he brought the *Journal* over one morning, and showed it to me. I could not say who paid for it; I did not. Besides the billiard hall, the firm kept cigars. The cigar stand was run in connection with the billiard hall. Money for the games played, and for cigars, was the proceeds of the billiard hall, and it was paid out for expenses, etc. At the time of the contract of partnership the property of the firm was billiard tables, pool tables, a cigar case, cigars on hand, and other fixtures, chairs, etc; When I took these things they were in charge of Mr. Atwood, as far as I knew. I usually sent him (Atwood) monthly statements of the receipts and expenses taken in from the tables and cigars, and expenses of gas and fuel.

I reckoned cigar bills as firm expenses. I don't know of any knowledge particularly Mr. Atwood had of that, except that it was all run as one business, and proceeds all went into one box; I don't know how he knew it all went into one box. There was about $171.70 of goods purchased of Peregoy & Moore. I purchased the goods in the firm name, of course.

Q. What statement, if any, did you ever make to Mr. Atwood regarding cigar bills and other expenses?

A. I wrote a letter to him once, asking him to give me some money, that I was in debt, and needed some money to pay off some bills; that money was desired to pay off this cigar bill; don't know whether I mentioned it that way in the letter or not; I don't remember any more I asked for. Atwood replied in writing; I don't know where the writing is, and haven't it. As near as I can remember, Atwood said something like this: If it was a necessary bill he would try and give me the money when he came up. This is near as I can remember.

A letter from Sarsbaugh to Atwood is set out in the record, which has no bearing upon the case.

W. E. Brock testified: "Council Bluffs is my headquarters. Have traveled for Peregoy & Moore five years; am the salesman that sold that bill of goods to the Arlington Billiard Hall, some time after May 1, 1883. I sold to a gentleman named Sarsbaugh. Atwood & Sarsbaugh was the firm name he always gave me. When I sold I gave credit principally and particularly to Mr. Atwood. I would not have sold to Mr. Sarsbaugh. I never suspected that Mr. Atwood was not a partner. I sold him in the neighborhood of $200, but I could not state the exact amount. The bill was not paid when due; has never been paid to my knowledge. Whenever I would present the bill to Sarsbaugh he would put me over to Mr. Atwood. He would tell me that Atwood would pay the bill; that he sent all the money to Mr. Atwood the first of every

month. I presented the bill to Mr. Atwood. I don't know the exact date ; some time after it was due; it was at the Arlington Billiard Hall; I met Mr. Atwood there. I spoke to Mr. Atwood, and told him it was getting old, and it would look better if it was settled up. I showed it to him in my pocket ledger. He said he had already received a statement of the account from the firm, and that I could write that he would fix that as soon as he returned to Springfield ; he would remit at least one-half. I have an idea, but I am not sure of this, that he said a hundred dollars of the account, and the rest he would pay before long, but his idea in running the billiard hall was not to put any more into the billiard hall than he had, and he would like to have it pay it up itself, but that it was getting old, and he would square it up himself."

The following letters were then introduced:

"Lincoln, Neb., Sept. 21st, '83.
" *Messrs. Peregoy & Moore, Council Bluffs, Ia.*:
" Dear Sirs—I will drop you a line in regard to cigar bill, which is past due, and will say Mr. Atwood is east, in New York, and will not be back before about 1st October, when will pay you up prompt on his return.
" Hoping that is satisfactory,
        , " Very truly yours,
            " F. E. Sarsbaugh,
                " *Manager Billiard Hall.*"

"Lincoln, Neb., June 26.
" *Peregoy & Moore, Council Bluffs:*
" Dear Sir—You may send me 300 Cubana cigars and 300 J. W. P. cigars. Would like to have some.
        " Yours truly,
            "Atwood & Sarsbaugh,
" *Arlington Billiard Hall, Lincoln, Neb.*"

"LINCOLN, NEB., Nov. 5th, '83.

"*Messrs. Peregoy & Moore:*

"DEAR SIRS—Your statement received. Am sorry to see I have not yet remitted, but say that Mr. Atwood is back east and was expected here sometime ere this, but for some reason had been delayed. He will be here about 12th this month, and soon as he returns will send you a check for full amount. Hoping you will pardon the delay so far, and will add that I do not look for the last order until is paid what has been received.

"Yours respectfully,

"A. & SARSBAUGH."

Brock further testified : "I don't know what constituted the Arlington Billiard Hall on 1st day of May, 1883, on that identical day."

Q. Did you sell cigars to Jacob S. Atwood?

A. No, sir.

Q. Had you sold cigars to the Arlington Billiard Hall prior to May 1st, 1883?

A. Yes, sir ; and up to May 1st, 1883, I think. I sold to John S. Atwood, the proprietor. The billiard hall up to that time kept cigars and sold them.

Cross-examined he testified :

Q. You say you shipped goods to John S. Atwood, of the Arlington Billiard Hall ?

A. Yes, sir.

Q. Is he Jacob S. Atwood?

A. I don't think he is. I first made the acquaintance of Sarsbaugh somewhere in the year 1883, at the Arlington Billiard Hall, Lincoln, Neb. I saw Jacob S. Atwood there at that time ; had no conversation with him. On that occasion I asked Sarsbaugh who was going to run it, and how. He said that the old gentleman had taken John's interest, and had put him in there, and they were going to run it on the shares. I asked him if he wanted to buy some goods, and he said yes. We had sold them be-

fore, and he wanted to keep the same cigars. I gave credit principally to Mr. Atwood.

Q.    Why didn't you give it to the firm?

A.    He was the only one in that firm that I knew had a commercial standing.

Q.    How did you know he had a commercial standing?

A.    Just from hearsay.

Q.    Did you ever examine?

A.    I never did.

Q.    You don't know whether he had any standing or not?

A.    I don't know.    *    *    *    I did not go out and inquire of anybody as to the credit of Mr. Atwood. I do not extend credit myself. I take orders, and the house places them if satisfactory; if not, they refuse them. I never talked with Jacob S. Atwood about the sale of these cigars to him, or to the firm, before the sale.

Q.    When was it you first talked with him about this sale; after they had long been past due?

A.    Yes.

Q.    And Sarsbaugh hadn't paid?

A.    No. He just turned me over to Mr. Atwood.

Q.    Did you ever talk to Mr. Atwood about this matter until Sarsbaugh refused to pay?

A.    No.

Q.    When were the times you met him at the hotel?

A.    After the bill was sold and due.

Q.    After you first saw him did you first speak to him about this bill the first time?

A.    Yes.

Q.    And the next time you saw him did you speak to him about this bill?

A.    I don't know as I did.

Q.    Where did you see Mr. Atwood that you first spoke to him about the cigar bill?

A.    At the Arlington Billiard Hall.

Q. When did that occur?

A. At the Arlington Billiard Hall.

Q. What time was it?

A. The fall of the year. I said to him the bill was becoming old, and it would look better if it was settled up. I presented it to him, and he looked at it, and said I could tell my firm when he went to Springfield, Missouri, he would send part of the money, and the rest before long.

Q. Did he make that promise to you in writing or verbally?

A. Just verbally.

The testimony of Jacob S. Atwood was taken by deposition, in which he denies the existence of the partnership between him and Sarsbaugh, and denies all liability for the goods in question. It will thus be seen that there is a direct conflict in the testimony as to the existence of the the partnership of Atwood & Sarsbaugh, although a preponderance of such testimony tends to show the existence of such partnership. It is unnecessary, therefore, to consider the question of a partnership as to third persons, as the written contract set out, with the acts of the parties done under it, as shown by a preponderance of the testimony, clearly establishes a partnership not only as to third persons, but as between the parties.

The judgment of the district court, therefore, is right, and is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.